# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM POTTER,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 20-1825** |
| **v.** | : | |
| | : | |
| **COZEN O'CONNOR,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                   JANUARY 6, 2021

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiffs Adam Potter ("Potter") and Moxie HC, LLC ("Moxie") (collectively, "Plaintiffs") brought this action against the Cozen O'Connor law firm ("Cozen"), Anne Blume (a former member of Cozen) ("Blume"), and Anne M. Madonia (a current member of Cozen) (collectively, "Defendants"), asserting various state law claims, including breach of fiduciary duty and legal malpractice. Defendants move to dismiss the amended complaint on the basis that, *inter alia*, Plaintiffs lack standing to assert any of the claims. The issues raised in Defendants' motion have been fully briefed and are ripe for disposition. For the reasons stated herein, Defendants' motion to dismiss is granted.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in a plaintiff's complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556

U.S. 662, 677 (2009)).  The facts relevant to the underlying motion are as follows:[1]

  Potter is the sole member of Moxie.  During the relevant time period, Moxie owned 100% of the membership interest in Claims Pages, LLC ("Claims Pages") and 100% of the outstanding and issued capital stock in CLM Group, Inc. ("CLM Group").  Potter personally owned 100% of the outstanding and issued capital stock in C&E MGMT and Planning, Inc. ("C&E") (together with Claims Pages and CLM Group, the "Companies").

  Sometime in February 2018, Potter was approached by The Institutes, LLC, with an offer of $17 million to purchase the Companies.[2]  Potter sought advice from Blume about this offer.  At the time, Blume was an attorney and member of Cozen, served as general counsel to the Companies, and provided legal services to Potter and Moxie.  After conferring with Blume, Potter decided not to accept the Institutes' initial offer and asked it for more money.  The Institutes raised its offer to $20 million.  When Potter thoroughly discussed this second offer with Blume, Blume advised that the offer was "more money than he ever imagined" and that Potter should accept the offer so as to not risk losing the deal.  At no time did Blume recommend that Potter have the Companies valued or appraised.

  The Institutes was a long-standing client of Cozen.  When The Institutes made its purchase offer to Potter, The Institutes was represented by Cozen.  When consulting with Blume, Potter asked Blume whether the fact that the Companies were being sold to another entity that was also represented by Cozen created a conflict of interest.  Blume responded, "What's a conflict?" and advised Potter that there was no conflict.  At no time did Blume request or obtain a waiver of the inquired-about conflict from Potter.  After consultation with Blume, Potter accepted the $20 million offer.

  Upon Potter's acceptance, Cozen, representing The Institutes, prepared an Asset Purchase Agreement.  The Asset Purchase Agreement provided, in relevant part:

---

[1] The facts set forth below are primarily taken from Plaintiffs' amended complaint and are supplemented from the Asset Purchase Agreement that was attached to the amended complaint.  It is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider "documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  All of the facts have been construed in Plaintiffs' favor.

[2] Though Plaintiffs repeatedly refer to a purported sale of the Companies, as described below and evidenced by the Asset Purchase Agreement attached to Plaintiffs' amended complaint, the transaction actually involved the Companies' sale of their assets to The Institutes.

- Claims Pages, C&E, and CLM Group are identified as the "Sellers," and The Institutes is identified as the "Buyer."

- "[E]ach Seller shall sell . . . to Buyer, and Buyer shall purchase from each Seller, all of such Seller's right, title and interest in and to all the property and assets . . . of each Seller . . . ."

- "In consideration of Seller's sale and transfer to Buyer, Parent[3] shall cause Buyer . . . to pay Sellers initially an amount equal to Seventeen Million Three Hundred Twenty Nine Thousand and Ninety Eight Dollars (US$17,329,098) (the "Initial Purchase Price")."

- "On the Closing Date, Parent shall cause Buyer to pay, and Buyer shall pay to, Sellers the Initial Purchase Price (the "Closing Payment"), to be allocated to Sellers in the manner set forth on Schedule 2.3, and payable by wire transfer of immediately available funds . . . to the account of Sellers . . . ."

- "Parent shall cause Buyer to pay, and Buyer shall pay to Sellers," subsequent installment payments in amounts determined by provisions of the Asset Purchase Agreement.

The Asset Purchase Agreement was executed by the Institutes and Potter on June 1, 2018.

Almost immediately after the sale of the Companies' assets to The Institutes, Blume was appointed Chief Executive Officer of CLM Group and resigned from Cozen. Sometime thereafter, Potter learned that the Companies' assets had been sold for an amount substantially below their true and fair value.

Under the terms of the Asset Purchase Agreement, the purchase price was to be paid to the Sellers by delivery of an initial payment and three subsequent installment payments. The third and final installment payment was to be calculated based on twelve months of the Companies' post-sale net revenue. In the event of a dispute as to the amount of the installment payments, the Asset Purchase Agreement provided a dispute resolution mechanism. Such a dispute arose with respect to the third and final installment. Plaintiffs allege that during the dispute resolution process, Defendants wrongfully provided to the accountant tasked with resolving the dispute, Plaintiffs' confidential information obtained through the course of Defendants' representation of Potter and Moxie. Plaintiffs allege that as a result of this improper communication of Plaintiffs' confidential information, the value of the third installment payment was diminished by $344,951.

Based on these alleged facts, Plaintiffs assert claims for breach of fiduciary duty and legal malpractice. Notably, with respect to the harm allegedly suffered, Plaintiffs point solely to "the difference in the true value of the Companies and the

---

[3] "Parent" is identified in the Asset Purchase Agreement as The American Institute for Chartered Property Casualty Underwriters.

3

purchase price stated in the Asset Purchase Agreement." (ECF 19, at p. 9 (citing Am. Compl. at ¶ 68)).

**LEGAL STANDARD**

Defendants seek the dismissal of all of Plaintiffs' claims on the basis that Plaintiffs lack standing. "Article III standing is essential to federal subject matter jurisdiction." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016). Therefore, a motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1) . . . ."[4] *Constitution Party v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quotations omitted).

When challenging a court's subject matter jurisdiction, a party may do so by way of either a facial or a factual attack. *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). Here, Defendants have made only a facial attack, which "concerns 'an alleged pleading deficiency[.]'" *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (citations omitted). In resolving a 12(b)(1) facial attack, the court applies the same standard that it does for Rule 12(b)(6) motions. *Constitution Party*, 757 F.3d at 358. As such, the court accepts the factual allegations of the complaint to be true and considers them in the light most favorable to the plaintiffs. *Id.*; *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The burden of establishing subject-matter jurisdiction rests with the party asserting its existence. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

**DISCUSSION**

As noted, Defendants contend that Plaintiffs lack standing to assert any of their claims. Specifically, Defendants argue that Plaintiffs have failed to articulate how they, as opposed to the

---

[4] Defendants' motion cites to Rule 12(b)(6), not Rule 12(b)(1). However, as Plaintiffs correctly point out, a legal challenge to a plaintiff's standing is properly brought pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

non-party Companies, have suffered a particularized, concrete injury-in-fact as is required to show the existence of an actual case or controversy, thereby invoking federal jurisdiction. This Court agrees.

Article III of the United States Constitution permits federal courts to consider only actual "cases or controversies." *See Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). The "core" of the "case-or-controversy requirement" is the "triad of injury in fact, causation, and redressability." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). This core "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore*, 495 U.S. at 155. To meet the injury-in-fact requirement, a plaintiff must establish "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). If a litigant does not meet these requirements, the case must be dismissed for lack of subject-matter jurisdiction. *See Steel Co.*, 523 U.S. at 88-89. Importantly, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561. Thus, as Plaintiffs acknowledge, in order to establish standing, they must allege facts sufficient to show that *they* (as opposed to some other party) suffered an injury-in-fact; that is, that they suffered a concrete and particularized invasion of a legally-protected interest.

As set forth above, in the amended complaint (and in their response to the underlying motion), Plaintiffs point solely to the alleged "difference in the true value of the Companies and the purchase price stated in the Asset Purchase Agreement" as their injury-in-fact. (*See* ECF 19 at p. 9 (quoting Am. Comp. at ¶ 68); *see also* Am. Compl. at ¶¶ 66, 78, 89, 90, 97, 98, and 106)). Specifically, Plaintiffs allege that they have "suffered monetary losses in the millions of dollars represented by the deficit in the set purchase price and the true value of the Companies on the date

of sale, plus $344,951 in losses associated with resolution of the dispute over the value of the installment payments . . . ." (Am. Comp. at ¶ 78). Pursuant to the clear terms of the Asset Purchase Agreement, however, the purchase price (including the subsequent installment payments) was to be paid *to the Companies*, which were selling their assets to The Institutes. As such, the only injury-in-fact alleged in the amended complaint is an injury suffered by the Companies themselves.

Plaintiffs have repeatedly indicated in their amended complaint *and* their response to the underlying motion that "they sold the Companies." The Asset Purchase Agreement, however, indicates otherwise. The Asset Purchase Agreement provided for the sale of a seller(s') *assets* (not stock or member interests) to a buyer. Neither Potter nor Moxie are identified as "Sellers" in the Asset Purchase Agreement. Rather, the Asset Purchase Agreement clearly identifies the "Sellers" as including *only* Claims Pages, C&E, and CLM Group, *i.e.*, the Companies. Because the purchase price was owed to the Sellers, any damages accountable to a diminution of the purchase price were suffered by Sellers—the Companies—not by Plaintiffs.

Though Plaintiffs collectively owned 100% of the outstanding stock/membership interests in the Companies, such status as shareholders does not confer standing on Plaintiffs to assert claims belonging to the Companies. Under Pennsylvania law, "a shareholder does not have standing to institute a direct suit for 'a harm that is peculiar to the corporation and that is only indirectly injurious to the shareholder.'" *Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. Ct. 2014) (quoting *Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 321 (Pa. 1961)); *see also Lieberman v. Corporacion Experienca Unica, S.A.*, 226 F. Supp. 3d 451, 459 (E.D. Pa. 2016) ("In Pennsylvania, a shareholder lacks standing to institute a direct suit for harm [that is] peculiar to

the corporation and [that is] only [ ] indirectly injurious to [the] shareholder.").[5] As explained by the Superior Court of Pennsylvania in *Hill*:

> To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery. *See id.; Burdon v. Erskine*, 264 Pa. Super. 584, 401 A.2d 369, 370 (1979) (*en banc*) ("[a]n injury to a corporation may . . . result in injury to the corporation's stockholders. Such injury, however, is regarded as 'indirect', and insufficient to give rise to a direct cause of action by the stockholder"); *Fishkin v. Hi–Acres, Inc.*, 462 Pa. 309, 341 A.2d 95, 98 n. 4 (1975) ("[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, it is an individual action") (internal quotations and citations omitted); *White v. First Natl Bank*, 252 Pa. 205, 97 A. 403, 405 (1916) ("a stockholder can maintain a[ direct] action where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract or otherwise, and owing to him directly . . . . But the difficulty with the plaintiff's case is that he has failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder"); *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (holding that, to determine whether a shareholder's claim is direct or derivative, "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation").

*Hill*, 85 A.3d at 548-49.

Based on the reasons set forth, this Court finds that Plaintiffs lack standing to bring any of the asserted claims because their claim for relief is comprised entirely of monetary damages belonging to non-parties, the Companies.  As noted, the only concrete, particularized harm that Plaintiffs attribute to Defendants' alleged misconduct is the diminution of the amount of money (*i.e.*, the purchase price) received under the Asset Purchase Agreement by the Companies in consideration of the sale of their assets.  As such, Plaintiffs have merely alleged "a harm that is

---

[5] The same is true under Florida law to the extent Florida law would apply to some of the Companies. *See e.g., Home Title Co. of Md. v. LaSalla*, 257 So.3d 640, 643 (Fla. 2d DCA 2018) ("Generally, a shareholder of a corporation or a member of an LLC may not maintain an action in his or her own right if the cause of action is derived from the right of the corporation or the LLC to bring the action.").

peculiar to the [non-party] corporation[s]," *Hill*, 85 A.3d at 548, and not a harm that is "independent of any injury to the" Companies. Therefore, Plaintiffs have not alleged a valid injury-in-fact and, consequently, lack standing to assert all of the claims in the amended complaint. Without standing, Plaintiffs' claims do not present any actual case or controversy, thus this Court does not have subject-matter jurisdiction over all the claims asserted in the amended complaint. Accordingly, all claims in the amended complaint are dismissed.

**CONCLUSION**

For the reasons stated herein, Plaintiffs' amended complaint fails to state facts sufficient to show an actual case and controversy. Specifically, Plaintiffs failed to allege any injury-in-fact that Plaintiffs, as opposed to the non-party Companies, have suffered. As such, Defendants' motion to dismiss is granted, and this matter is dismissed for lack of subject-matter jurisdiction. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J, U.S.D.C*