# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM POTTER,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 20-1825** |
| **v.** | : | |
| | : | |
| **COZEN O'CONNOR,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                              FEBRUARY 16, 2023

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiffs Adam Potter ("Potter") and Moxie HC, LLC ("Moxie") (collectively, "Plaintiffs") brought this action against the Cozen O'Connor law firm ("Cozen"), Anne Blume (a former member of Cozen) ("Blume"), and Anne M. Madonia (a current member of Cozen) (collectively, "Defendants"), asserting various state-law claims, including claims for breach of fiduciary duty and legal malpractice. Defendants move to dismiss the amended complaint on the basis that, *inter alia*, Plaintiffs lack prudential standing because they fail to allege facts sufficient to plausibly show that they suffered injury independent of that suffered by all shareholders and/or the corporate entities.[1] The issues raised in Defendants' motion have been fully briefed and are ripe for disposition. For the reasons stated herein, Defendants' motion to dismiss is granted.

---

[1] By Memorandum Opinion and Order dated January 6, 2021, this Court granted Defendants' motion to dismiss on the basis that Plaintiffs lacked Article III standing and, thus, that this Court lacked subject-matter jurisdiction. [ECF 24, 25]. On appeal, the United States Court of Appeals for the Third Circuit determined that Defendants' standing argument was incorrectly characterized as Article III standing as opposed to prudential standing and, as such, the issue should have been analyzed under the Federal Rule of Civil Procedure ("Rule") 12(b)(6) standard rather than the Rule 12(b)(1) standard. *Potter v. Cozen O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022). The Third Circuit remanded the matter for this Court's review of the issue under the Rule 12(b)(6) standard. *Id.* at 158.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in a plaintiff's operative complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The facts relevant to the underlying motion are as follows:[2]

> Potter is the sole member of Moxie. During the relevant time period, Moxie owned 100% of the membership interest in Claims Pages, LLC ("Claims Pages"), and 100% of the outstanding and issued capital stock in CLM Group, Inc. ("CLM Group"). Potter personally owned 100% of the outstanding and issued capital stock in C&E MGMT and Planning, Inc. ("C&E") (together with Claims Pages and CLM Group, the "Companies").

> Sometime in February 2018, Potter was approached by The Institutes, LLC (the "Institutes"), with an offer of $17 million to purchase the Companies.[3] Potter sought advice from Blume about this offer. At the time, Blume was an attorney and member of Cozen, served as general counsel to the Companies, and provided legal services to Potter and Moxie. After conferring with Blume, Potter decided not to accept the Institutes' initial offer and asked it for more money. The Institutes raised its offer to $20 million. When Potter thoroughly discussed this second offer with Blume, Blume advised Potter that the offer was "more money than he ever imagined" and that Potter should accept the offer so as to not risk losing the deal. At no time did Blume recommend that Potter have the Companies valued or appraised.

---

In adjudicating Defendants' motion, this Court has considered Defendants' motion to dismiss Plaintiffs' amended complaint, [ECF 17], Plaintiffs' response in opposition thereto, [ECF 18], Defendants' reply, [ECF 21], Defendants' supplemental motion to dismiss, [ECF 34], Plaintiffs' supplemental response in opposition, [ECF 35], Defendants' supplemental reply, [ECF 36], and the allegations in the amended complaint, [ECF 11].

[2]   The facts set forth below are primarily taken from Plaintiffs' amended complaint and are supplemented from the Asset Purchase Agreement that was attached to the amended complaint. It is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider "documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). All of the facts have been construed in Plaintiffs' favor.

[3]   Though Plaintiffs repeatedly refer to a purported sale of the Companies, as described below and evidenced by the Asset Purchase Agreement attached to Plaintiffs' amended complaint, the transaction actually involved the Companies' sale of their assets to The Institutes.

The Institutes was a longstanding client of Cozen. When The Institutes made its purchase offer to Potter, The Institutes was represented by Cozen. When consulting with Blume, Potter asked Blume whether the fact that the Companies were being sold to another entity that was also represented by Cozen created a conflict of interest. Blume responded, "What's a conflict?" and advised Potter that there was no conflict. At no time did Blume request or obtain a waiver of the inquired-about conflict from Potter. After consultation with Blume, Potter accepted the $20 million offer.

Upon Potter's acceptance, Cozen, representing The Institutes, prepared an Asset Purchase Agreement. The Asset Purchase Agreement provided, in relevant part:

- Claims Pages, C&E, and CLM Group are identified as the "Sellers," and The Institutes is identified as the "Buyer."

- "[E]ach Seller shall sell . . . to Buyer, and Buyer shall purchase from each Seller, all of such Seller's right, title and interest in and to all the property and assets . . . of each Seller . . . ."

- "In consideration of Seller's sale and transfer to Buyer, Parent[4] shall cause Buyer . . . to pay Sellers initially an amount equal to Seventeen Million Three Hundred Twenty-Nine Thousand and Ninety-Eight Dollars (US$17,329,098) (the "Initial Purchase Price")."

- "On the Closing Date, Parent shall cause Buyer to pay, and Buyer shall pay to, Sellers the Initial Purchase Price (the "Closing Payment"), to be allocated to Sellers in the manner set forth on Schedule 2.3, and payable by wire transfer of immediately available funds . . . to the account of Sellers . . . ."

- "Parent shall cause Buyer to pay, and Buyer shall pay to Sellers," subsequent installment payments in amounts determined by provisions of the Asset Purchase Agreement.

The Asset Purchase Agreement was executed by the Institutes and Potter on June 1, 2018.

Almost immediately after the sale of the Companies' assets to The Institutes, Blume was appointed Chief Executive Officer of CLM Group and resigned from Cozen. Sometime thereafter, Potter learned that the Companies' assets had been sold for an amount substantially below their true and fair value.

Under the terms of the Asset Purchase Agreement, the purchase price was to be paid to the Sellers by delivery of an initial payment and three subsequent

---

[4]   "Parent" is identified in the Asset Purchase Agreement as The American Institute for Chartered Property Casualty Underwriters.

3

installment payments. The third and final installment payment was to be calculated based on twelve months of the Companies' post-sale net revenue. In the event of a dispute as to the amount of the installment payments, the Asset Purchase Agreement provided a dispute resolution mechanism. Such a dispute arose with respect to the third and final installment. Plaintiffs allege that during the dispute resolution process, Defendants wrongfully provided, to the accountant tasked with resolving the dispute, Plaintiffs' confidential information obtained through the course of Defendants' representation of Potter and Moxie. Plaintiffs allege that as a result of this improper communication of Plaintiffs' confidential information, the value of the third installment payment was diminished by $344,951.

Based on these alleged facts, Plaintiffs assert claims for breach of fiduciary duty and legal malpractice. Notably, with respect to the harm allegedly suffered, Plaintiffs allege that they "have suffered millions of dollars in damages, representing the difference in the true value of the Companies and the purchase price stated in the Asset Purchase Agreement, a priced that was negotiated by Blume." (Am. Compl., ECF 11, at ¶ 68).

**LEGAL STANDARD**

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).[5] When considering a Rule 12(b)(6) motion, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210–11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial

---

[5] As determined by Third Circuit, Defendants' challenge to Plaintiffs' prudential standing must be analyzed under the Rule 12(b)(6) standard rather than the Rule 12(b)(1) standard. *Potter*, 46 F.4th at 157.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**DISCUSSION**

Defendants contend that Plaintiffs lack prudential standing to assert any of their claims because Plaintiffs have failed to allege facts sufficient to plausibly show how they, as opposed to the non-party Companies, have suffered damages independent of those suffered by the non-party Companies.  Specifically, Defendants contend that Plaintiffs' amended complaint alleges only damages suffered by the non-party Companies.  This Court agrees.

Though Plaintiffs collectively owned 100% of the outstanding stock/membership interests in the non-party Companies, such status as shareholders does not confer standing on Plaintiffs to assert claims belonging to the non-party Companies.  Under Pennsylvania law, "a shareholder does not have standing to institute a direct suit for 'a harm that is peculiar to the corporation and that is only indirectly injurious to the shareholder.'" *Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. Ct. 2014) (quoting *Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 321 (Pa. 1961)); *see also Lieberman v. Corporacion Experienca Unica, S.A.*, 226 F. Supp. 3d 451, 459 (E.D. Pa. 2016) ("In Pennsylvania, a shareholder lacks standing to institute a direct suit for harm [that is] peculiar to

the corporation and [that is] only [] indirectly injurious to [the] shareholder.").[6] As explained by the Superior Court of Pennsylvania in *Hill*:

> To have standing to sue individually, the shareholder must allege a direct, personal injury—that is, independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery. *See id.*; *Burdon v. Erskine*, 264 Pa. Super. 584, 401 A.2d 369, 370 (1979) (*en banc*) ("[a]n injury to a corporation may . . . result in injury to the corporation's stockholders. Such injury, however, is regarded as 'indirect', and insufficient to give rise to a direct cause of action by the stockholder"); *Fishkin v. Hi–Acres, Inc.*, 462 Pa. 309, 341 A.2d 95, 98 n. 4 (1975) ("[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, it is an individual action") (internal quotations and citations omitted); *White v. First Natl Bank*, 252 Pa. 205, 97 A. 403, 405 (1916) ("a stockholder can maintain a [direct] action where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract or otherwise, and owing to him directly . . . . But the difficulty with the plaintiff's case is that he has failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder"); *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (holding that, to determine whether a shareholder's claim is direct or derivative, "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation").

*Hill*, 85 A.3d at 548–49.

In their supplemental response, Plaintiffs acknowledge this applicable law but contend that they have alleged facts placing them within an "exception." Plaintiffs provide the following quotes (without any substantive discussion) to support their exception argument:

- "Allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd. V. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990).

---

[6] The same is true under Florida law to the extent Florida law would apply to some of the non-party Companies. *See e.g.*, *Home Title Co. of Md. v. LaSalla*, 257 So.3d 640, 643 (Fla. 2d DCA 2018) ("Generally, a shareholder of a corporation or a member of an LLC may not maintain an action in his or her own right if the cause of action is derived from the right of the corporation or the LLC to bring the action.").

the corporation and [that is] only [] indirectly injurious to [the] shareholder.").[6] As explained by the Superior Court of Pennsylvania in *Hill*:

> To have standing to sue individually, the shareholder must allege a direct, personal injury—that is, independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery. *See id.*; *Burdon v. Erskine*, 264 Pa. Super. 584, 401 A.2d 369, 370 (1979) (*en banc*) ("[a]n injury to a corporation may . . . result in injury to the corporation's stockholders. Such injury, however, is regarded as 'indirect', and insufficient to give rise to a direct cause of action by the stockholder"); *Fishkin v. Hi–Acres, Inc.*, 462 Pa. 309, 341 A.2d 95, 98 n. 4 (1975) ("[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, it is an individual action") (internal quotations and citations omitted); *White v. First Natl Bank*, 252 Pa. 205, 97 A. 403, 405 (1916) ("a stockholder can maintain a [direct] action where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract or otherwise, and owing to him directly . . . . But the difficulty with the plaintiff's case is that he has failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder"); *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (holding that, to determine whether a shareholder's claim is direct or derivative, "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation").

*Hill*, 85 A.3d at 548–49.

In their supplemental response, Plaintiffs acknowledge this applicable law but contend that they have alleged facts placing them within an "exception." Plaintiffs provide the following quotes (without any substantive discussion) to support their exception argument:

- "Allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd. V. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990).

---

[6] The same is true under Florida law to the extent Florida law would apply to some of the non-party Companies. *See e.g.*, *Home Title Co. of Md. v. LaSalla*, 257 So.3d 640, 643 (Fla. 2d DCA 2018) ("Generally, a shareholder of a corporation or a member of an LLC may not maintain an action in his or her own right if the cause of action is derived from the right of the corporation or the LLC to bring the action.").

- "If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly." *John L. Motley Associates, Inc. v. Rumbaugh*, 104 B.R. 683, 686 (E.D. Pa. 1989) (quotation omitted).

(Pls.' Resp. in Opp., ECF 35, at p. 12).[7] Though Plaintiffs suggest these cited decisions provide an exception to the general rule, they are merely statements of the general law described above. Regardless, under this law (whether considered an exception or just the general law), a shareholder may not bring a claim for injury suffered by the corporation, unless the shareholder suffered an injury independent of that suffered by the corporation. *See Hill*, 85 A.3d at 548–49.

Notwithstanding multiple attempts to point to allegations in the amended complaint to support an injury suffered by Plaintiffs independent of that suffered by the non-party Companies, Plaintiffs continue in their failure to do so. Instead, they again rely solely on the allegations in the amended complaint identifying the injury as the receipt of a purchase price that was far lower than a fair selling price for the non-party Companies. (Am. Compl., ECF 11, at ¶¶ 51, 68, 78, 89, 90, 91, 97, 98, 106). Specifically, Plaintiffs allege that they have "suffered monetary losses in the millions of dollars represented by the deficit in the set purchase price and the true value of the non-party Companies on the date of sale, plus $344,951 in losses associated with resolution of the dispute over the value of the installment payments . . . ." (*Id.* at ¶ 78). Each of these factual allegations describe the injury suffered by the Companies as a result of the non-party Companies' sale of assets at a price allegedly below fair market value. Pursuant to the clear terms of the Asset Purchase Agreement, the purchase price (including the subsequent installment payments) was to be paid *to the Companies*, which were selling their assets to The

---

[7] It is not lost on this Court that Plaintiffs have provided no citations to cases in which a court found that a shareholder alleged an injury falling within the purported "exception."

Institutes.  As such, the only damages alleged in the amended complaint are those suffered by the non-party Companies themselves.

Nonetheless, Plaintiffs have repeatedly indicated in their amended complaint *and* their responses to the underlying motion that "they sold the Companies."  The Asset Purchase Agreement, however, indicates otherwise.  The Asset Purchase Agreement provided for the sale of a seller(s)'s *assets* (not stock or member interests) to a buyer.  Neither Potter nor Moxie is identified as a "Seller" in the Asset Purchase Agreement.  Rather, the Asset Purchase Agreement clearly identifies the "Sellers" as including *only* Claims Pages, C&E, and CLM Group, *i.e.*, the non-party Companies.  Because the purchase price was owed to the Sellers, any damages accountable to a diminution of the purchase price were suffered by Sellers—*i.e.*, the non-party Companies—not by Plaintiffs.

Based on the reasons set forth, this Court finds that Plaintiffs have failed to allege facts sufficient to plausibly show that they, as opposed to the non-party Companies, suffered any injury independent of any injury to the non-party Companies.  As noted, the only damages that Plaintiffs attribute to Defendants' alleged misconduct is the diminution of the amount of money (*i.e.*, the purchase price) received under the Asset Purchase Agreement by the non-party Companies in consideration of the sale of their assets.  As such, Plaintiffs have merely alleged "a harm that is peculiar to the [non-party] corporation[s]," *Hill*, 85 A.3d at 548, and not a harm that is "independent of any injury to the" non-party Companies.  Therefore, Plaintiffs have not alleged facts to support any independent injury suffered by Plaintiffs.  As such, Plaintiffs have failed to assert a viable claim.  Accordingly, all claims in the amended complaint are dismissed.

As a final point, in its decision remanding this matter, the Third Circuit indicated that this Court should consider Plaintiffs' alternative request for leave to file a second amended complaint.

*Potter*, 46 F.4th at 158.  In their supplemental response, however, Plaintiffs make no reference to amendment, nor do they provide any proposed amendments.  Notably, Plaintiffs indicate that the non-party Companies (in their current corporate forms) have filed a "savings action" in state court asserting the same claims as those asserted in this action, without the inclusion of Plaintiffs Potter and Moxie.  (Pls.' Resp. in Opp., ECF 35, at p. 13 n.2).  In light of this state-court action and the absence of any current request to file a second amended complaint here, leave to amend is unwarranted.

**CONCLUSION**

For the reasons stated herein, Plaintiffs' amended complaint fails to allege facts sufficient to plausibly show any damages suffered by Plaintiffs independent of those suffered by the non-party Companies.  As such, Defendants' motion to dismiss is granted, and this matter is dismissed for failure to state a claim.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*