# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM POTTER,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 20-1825** |
| **v.** | : | |
| | : | |
| **COZEN O'CONNOR,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                         NOVEMBER 14, 2023

## MEMORANDUM OPINION

### INTRODUCTION

Original Plaintiffs, Adam Potter ("Potter") and Moxie HC, LLC ("Moxie") (collectively, the "Original Plaintiffs"), brought this action against the Cozen O'Connor law firm ("Cozen"), Anne Blume (a former member of Cozen) ("Blume"), and Anne M. Madonia (a current member of Cozen) (collectively, the "Defendants"), asserting various state law claims, including claims for breach of fiduciary duty and legal malpractice, premised on conflicts of interest allegations arising when Defendants represented Original Plaintiffs in a transaction involving the sale of assets belonging to two companies, Claims Pages, LLC, and CLM Group, Inc. (collectively, the "Companies"). The Companies were wholly owned by Original Plaintiffs. Original Plaintiffs claimed that the conflicts of interest resulted in a deflated sale price for the Companies' assets.

By separate Memorandum Opinions, this action was twice dismissed on the basis that the Original Plaintiffs had failed to allege facts sufficient to show that they, as opposed to the Companies, held the requisite standing to assert the claims. The Original Plaintiffs were granted leave to file a second amended complaint to cure the noted deficiencies. The Original Plaintiffs'

second amended complaint, unlike the previous versions of the complaint, included two newly created Connecticut entities — Vacation Inspired Group, Inc. and Short Ride, LLC — as plaintiffs.

Defendants now move to dismiss the second amended complaint arguing, *inter alia*, that this Court lacks subject-matter jurisdiction over the matter as now filed because the newly added plaintiffs were created and then added to this matter to manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359. Plaintiffs oppose the motion. The issues raised in Defendants' motion have been fully briefed and are ripe for disposition.[1] For the reasons stated herein, Defendants' motion to dismiss is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in a plaintiff's operative complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The facts relevant to the underlying motion and alleged in the second amended complaint are as follows:[2]

Potter is the sole member of Moxie. During the relevant time period, Moxie owned 100% of the membership interest in Claims Pages, LLC ("Claims Pages"), and 100% of the outstanding and issued capital stock in CLM Group, Inc. ("CLM Group"). Potter personally owned 100% of the outstanding and issued capital stock

---

[1]    In adjudicating Defendants' motion to dismiss, [ECF 44], this Court has also considered Plaintiffs' response in opposition, [ECF 48, 49], Defendants' reply, [ECF 50], and the allegations in the second amended complaint, [ECF 42].

[2]    The facts set forth below are primarily taken from Plaintiffs' second amended complaint and are supplemented from the Asset Purchase Agreement that was attached to the second amended complaint. It is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider "documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). All the facts have been construed in Plaintiffs' favor.

in C&E MGMT and Planning, Inc. ("C&E") (together with Claims Pages and CLM Group, the "Companies").

Sometime in February 2018, Potter was approached by The Institutes, LLC (the "Institutes"), with an offer of $17 million to purchase the Companies.[3]  Potter sought advice from Blume regarding this offer.  At the time, Blume was an attorney and member of Cozen, served as general counsel to the Companies, and provided legal services to Potter and Moxie.  After conferring with Blume, Potter decided not to accept the Institutes' initial offer and asked it for more money.  The Institutes raised its offer to $20 million.  When Potter thoroughly discussed this second offer with Blume, Blume advised Potter that the offer was "more money than he ever imagined" and that Potter should accept the offer and not risk losing the deal.  At no time did Blume recommend that Potter have the Companies valued or appraised.

The Institutes was also a longstanding client of Cozen.  When The Institutes made its purchase offer to Potter, The Institutes was represented by Cozen.  When consulting with Blume, Potter asked Blume whether the fact that the Companies were being sold to another entity that was also represented by Cozen created a conflict of interest.  Blume responded, "What's a conflict?" and advised Potter that there was no conflict.  At no time did Blume request or obtain a waiver of the inquired-about conflict from Potter.  After consultation with Blume, Potter accepted the $20 million offer.

Upon Potter's acceptance, Cozen, representing The Institutes, prepared an Asset Purchase Agreement.  The Asset Purchase Agreement provided, in relevant part:

- Claims Pages, C&E, and CLM Group are identified as the "Sellers," and The Institutes is identified as the "Buyer."

- "[E]ach Seller shall sell . . . to Buyer, and Buyer shall purchase from each Seller, all of such Seller's right, title and interest in and to all the property and assets . . . of each Seller . . . ."

- "In consideration of Seller's sale and transfer to Buyer, Parent[4] shall cause Buyer . . . to pay Sellers initially an amount equal to Seventeen Million Three Hundred Twenty-Nine Thousand and Ninety-Eight Dollars (US $17,329,098) (the "<u>Initial Purchase Price</u>")."

---

[3]     Though Plaintiffs repeatedly refer to a purported sale of the Companies, as evidenced by the Asset Purchase Agreement attached to Plaintiffs' second amended complaint, the transaction was actually the sale of the Companies' assets to The Institutes.

[4]     "Parent" is identified in the Asset Purchase Agreement as "The American Institute for Chartered Property Casualty Underwriters."

- "On the Closing Date, Parent shall cause Buyer to pay, and Buyer shall pay to, Sellers the Initial Purchase Price (the "Closing Payment"), to be allocated to Sellers in the manner set forth on Schedule 2.3, and payable by wire transfer of immediately available funds . . . to the account of Sellers . . . ."

- "Parent shall cause Buyer to pay, and Buyer shall pay to Sellers," subsequent installment payments in amounts determined by provisions of the Asset Purchase Agreement.

The Asset Purchase Agreement was executed by the Institutes and Potter on June 1, 2018.

Almost immediately after the sale of the Companies' assets to The Institutes, Blume was appointed Chief Executive Officer of CLM Group and resigned from Cozen. Sometime thereafter, Potter learned that the Companies' assets had been sold for an amount substantially below their true and fair value.

Under the terms of the Asset Purchase Agreement, the purchase price was to be paid to the Sellers by delivery of an initial payment and three subsequent installment payments. The third and final installment payment was to be calculated based on twelve months of the Companies' post-sale net revenue. In the event of a dispute as to the amount of the installment payments, the Asset Purchase Agreement provided a dispute resolution mechanism. Such a dispute arose with respect to the third and final installment. Plaintiffs allege that during the dispute resolution process, Defendants wrongfully provided, to the accountant tasked with resolving the dispute, Plaintiffs' confidential information obtained through the course of Defendants' representation of Potter and Moxie. Plaintiffs allege that as a result of this improper communication of Plaintiffs' confidential information, the value of the third installment payment was diminished by $344,951.

Based on these alleged facts, Plaintiffs assert claims for breach of fiduciary duty and legal malpractice. With respect to the harm suffered, Plaintiffs allege that they "have suffered millions of dollars in damages, representing the difference in the true value of the Companies and the purchase price stated in the Asset Purchase Agreement, a price that was negotiated by Blume." (Sec. Am. Compl., ECF 42, at ¶ 73).

By Memorandum Opinion and Order dated January 6, 2021, this Court granted the Defendants' motion to dismiss on the basis that the Original Plaintiffs lacked Article III standing and, thus, this Court lacked subject-matter jurisdiction. (ECF 24, 25). On appeal, the United States

Court of Appeals for the Third Circuit (the "Third Circuit") determined that the Defendants' standing argument was incorrectly characterized as Article III standing, as opposed to prudential standing and, as such, the issue should have been analyzed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) rather than Rule 12(b)(1).  *Potter v. Cozen O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022).  The Third Circuit remanded the matter for this Court's review of the issue under Rule 12(b)(6).  *Id.* at 158.

On remand, this Court assessed the Defendants' prudential standing argument under Rule 12(b)(6) and determined, again, that the Original Plaintiffs lacked standing to bring their claims. (ECF 37, 38).  Both opinions made it clear that the only parties with standing to bring the claims being asserted by the Original Plaintiffs were the Companies that sold their assets as part of the transaction underlying the Original Plaintiffs' claims.  After this Court dismissed the Original Plaintiffs' complaint a second time, the Original Plaintiffs sought leave to file a second amended complaint and attached a proposed second amended complaint.  (ECF 39).  The proposed second amended complaint included the Original Plaintiffs (Potter and Moxie) and two new plaintiffs, Vacation Inspired Group, Inc. ("Vacation FL") and Short Ride, LLC ("Short Ride FL"), both identified as Florida entities.

By Order dated March 17, 2023, this Court granted the Original Plaintiffs "leave to file a second amended complaint in the form of that attached as an exhibit to their underlying motion for reconsideration."  (ECF 41).  On March 31, 2023, Plaintiffs filed the second amended complaint. (ECF 42).  Notably, the filed second amended complaint differed from the proposed second amended complaint in two significant ways:  (1) the second amended complaint dropped Moxie as a plaintiff; and (2) added two plaintiffs, Vacation Inspired Group, Inc. ("Vacation CT") and

Short Ride, LLC ("Short Ride CT"), both identified as being Connecticut (rather than Florida) entities.

In their underlying motion to dismiss, Defendants argue that this Court lacks subject-matter jurisdiction because the two newly added Plaintiffs — Vacation CT and Short Ride CT — were created for the purpose of manufacturing diversity jurisdiction in violation of 28 U.S.C. § 1359. In support, Defendants provide publicly available documents showing the following:

(1) Vacation CT was incorporated in Connecticut on March 28, 2023;

(2) Short Ride CT was organized in Connecticut as a limited liability company on March 28, 2023, with Adam Potter as the sole member;

(3) Vacation FL was dissolved as a Florida entity on March 29, 2023; and

(4) Short Ride FL was dissolved as a Florida entity on March 28, 2023.

In response to Defendants' motion to dismiss, Plaintiffs submit publicly available corporate documents which evidence the revocation of the Florida dissolutions on May 1, 2023, and the merger of Vacation FL and Short Ride FL into Vacation CT and Short Ride CT on May 4, 2023.

**LEGAL STANDARD**

Though Defendants do not expressly cite to Rule 12(b)(1) in their motion, they argue, *inter alia*, that the second amended complaint should be dismissed for lack of subject-matter jurisdiction because the new plaintiffs added to this action to cure the legal standing deficiencies identified in this Court's previous decisions were manufactured to create diversity jurisdiction, a practice precluded by 28 U.S.C. § 1359. Notwithstanding, such motions are assessed pursuant to the standards under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1).

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[A] court must grant a motion to

dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). The plaintiff bears the burden of demonstrating that the court has jurisdiction to hear a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). In reviewing a facial challenge to subject-matter jurisdiction, a court must consider "'whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court.'" *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993). However, "a court may [also] consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* (explaining that "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied"). In addition, "when there is a fact question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings . . . '[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case.'" *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Therefore, this Court may consider evidence outside the pleadings to resolve factual issues bearing on the jurisdictional issue. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Here,

both parties have attached publicly available documents to their respective filings with respect to this Court's exercise of jurisdiction.[5]

**DISCUSSION**

As described above, in the second amended complaint, Plaintiffs added two new parties, Vacation CT and Short Ride CT, apparently, to cure the legal standing issues identified in this Court's previous decisions underlying the dismissal of Plaintiffs' prior complaint. Defendants argue that these two additional parties were created solely for the purpose of manufacturing diversity jurisdiction, a practice prohibited by 28 U.S.C. § 1359. Specifically, Defendants contend that these parties were created as Connecticut entities to take the place of their purported predecessors in interest — Vacation FL and Short Ride FL — which are Florida entities and as such (the Florida entities) would destroy diversity jurisdiction, (the only basis on which this Court can exercise subject-matter jurisdiction over this action), because Defendant Blume is also a Florida citizen.

Section 1359 provides:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359. Interpreting and applying § 1359, the Third Circuit held that artificially manufactured diversity is insufficient to create federal jurisdiction. *McSparran v. Weist*, 402 F.2d 867, 876 (3d Cir. 1968); *see also Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) (citing 28 U.S.C. § 1359 and stating "[n]or may a plaintiff create diversity by collusively

---

[5]     In their response, Plaintiffs suggest in a footnote that they should be permitted jurisdictional discovery before this Court resolves Defendants' jurisdictional challenge. This argument is misplaced here where both parties have produced and relied upon publicly available documents and those documents, along with the allegations in Plaintiffs' second amended complaint and the attached Asset Purchase Agreement, demonstrate that this Court lacks subject-matter jurisdiction.

assigning his interest in an action."); *Fed. Realty Inv. Tr. v. Juniper Props. Grp.*, 2000 WL 424287, *4 (E.D. Pa. Apr. 18, 2000) ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.").  Whether a party manufactures diversity is a question of fact for the court.  *McSparran*, 402 F.2d at 876.  As the parties invoking this Court's jurisdiction, Plaintiffs bear the burden of proving all the necessary facts to sustain that jurisdiction.  *Id.* at 875; *Renner v. Vitcov*, 339 F. Supp. 1020, 1021 (E.D. Pa. 1972).  In *McSparran,* the Third Circuit emphasized the considerable weight of this burden and held that a district court is presumed to be without jurisdiction "unless the contrary appears from the record," particularly in those cases where diversity jurisdiction may infringe upon the jurisdiction of state courts.  402 F.2d at 876.

Though not directly addressed by the Third Circuit, other courts have found that transfers or assignments that have the effect of creating federal jurisdiction raise a red flag and, thus, need to be examined with care.  *See McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004) (discussing cases where courts viewed assignments creating federal diversity jurisdiction skeptically).  In the § 1359 context, courts assess assignments between related parties with exacting scrutiny.  *E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015); *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 643–44 (1st Cir. 1995); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 474 (2d Cir. 1976).  Because such assignments are highly suspect, they are presumptively ineffective to create diversity jurisdiction.  *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862–63 (2d Cir.1995); *Yokeno v. Mafnas*, 973 F.2d 803, 809–10 (9th Cir. 1992).

Here, upon review of the procedural history of this case and the publicly available documents that **both** Plaintiffs and Defendants have provided, this Court finds that Plaintiffs created the newly added party plaintiffs — Vacation CT and Short Ride CT — for the purpose of

manufacturing diversity jurisdiction, that would otherwise be lacking if the newly added parties had been added in their original corporate forms (as Florida entities).  As noted above and as is well known to the parties, this Court dismissed this action *twice* on the basis that Potter and Moxie lacked standing to bring the claims asserted against Defendants; the first time, by Memorandum Opinion dated January 6, 2021, relying on Rule 12(b)(1) on the basis that Potter and Moxie lacked Article III standing.  (ECF 24).  After the Third Circuit remanded the matter for this Court to consider Defendants' arguments as challenges to the Original Plaintiffs' prudential standing under Rule 12(b)(6) rather than the Original Plaintiffs' Article III standing under Rule 12(b)(1), this Court again dismissed the action for lack of prudential standing by Memorandum Opinion dated February 16, 2023.  (ECF 37).  These two decisions made clear that the only parties that had standing to bring the claims were the companies that sold their assets through the transaction underlying the Original Plaintiffs' claims.  Those companies, — Claims Pages, LLC, and CLM Group, Inc., — were Florida entities for jurisdictional purposes.  As Florida entities, they could not be added to this action without destroying diversity jurisdiction because Defendant Blume was also a Florida citizen.

At some unspecified time, Claims Pages, LLC, changed its name to Short Ride, LLC ("Short Ride FL"), and CLM Group, Inc., changed its name to Vacation Inspired Group, Inc. ("Vacation FL").  Both entities, however, remained Florida entities until March 28, 2023 (three days before Plaintiffs filed the operative second amended complaint).  As such, adding them as parties to this action as they existed prior to March 28, 2023, would have destroyed complete diversity, the sole basis for this Court's exercise of subject-matter jurisdiction in this action.  Recognizing this jurisdictional problem, Plaintiffs sought to remedy it by creating two new entities domiciled in Connecticut—Short Ride CT and Vacation CT—into which Short Ride FL and

Vacation FL could and purportedly did merge.[6]  Notably, Plaintiffs have proffered no reason for the creation of these two Connecticut entities to rebut the presumption that they were created solely for the purpose of manufacturing diversity jurisdiction.

Under these undisputed facts and circumstances, this Court finds that Plaintiffs created Short Ride CT and Vacation CT solely for the purpose of manufacturing diversity jurisdiction. Therefore, pursuant to § 1359, this Court may not exercise subject-matter jurisdiction over this matter. Accordingly, the second amended complaint is dismissed for lack of subject-matter jurisdiction.[7]

**CONCLUSION**

For the reasons stated herein, this Court finds that the only basis on which this Court could exercise diversity jurisdiction over this matter was manufactured by Plaintiffs in violation of 28 U.S.C. § 1359. As such, Defendants' motion to dismiss is granted, and this matter is dismissed for lack of subject-matter jurisdiction. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[6]    It is not lost on this Court that the entirety of Plaintiffs' efforts to manufacture diversity jurisdiction occurred ***after*** this Court granted Plaintiffs leave to file a second amended complaint "in the form of that attached as an exhibit to their . . . motion for reconsideration." (ECF 41). Notably, the proposed second amended complaint attached to Plaintiffs' motion for leave to file a second amended complaint — unlike the second amended complaint eventually filed — added Vacation FL and Short Ride FL as plaintiffs, not Vacation CT and Short Ride CT.

[7]    Plaintiffs also attempt to justify this Court's exercise of diversity jurisdiction through the addition of the newly created Connecticut entity plaintiffs by relying on Rules 17 and 25. As argued by Defendants, however, neither of these Rules apply here. As Plaintiffs themselves acknowledge, "Rule 17 does not apply to transfers occurring after suit is commenced, as was the case here." (Pls'. Opp., ECF 48, at p. 15). Rule 25, dealing with "Substitution of Parties," applies to situations in which a matter is being prosecuted by a party possessed of the interest to do so, and over the course of the litigation, the interest is transferred to a new party, not yet party to the action. *See* F. R. Civ. P. 25. Here, the claims/interest being prosecuted by the newly named plaintiffs, Vacation CT and Short Ride CT, are not claims/interests that were being prosecuted by an original party to this action. As such, Rule 25 has no application here.